**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

BENJAMIN OFFICE SUPPLY & SERVICES. INC.,

|  |  |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | 20-CV-3693 (JS) (ST) |

2 CRYSTALS INC.,

                          Defendant.
-----------------------------------------------------------X

2 CRYSTALS INC.,

             Third-Party Plaintiff,


        v.

HERITAGE PARTNERS GROUP LLC, and
SAFE HOUZE LLC,


             Third-Party Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Before this court is a breach of contract action arising out of a sales agreement between Benjamin Office Supply & Services, Inc. ("Plaintiff") and 2 Crystals, Inc ("Defendant"). *See* Am. Compl., ECF No. 24. Plaintiff now moves for summary judgment against Defendant, pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Pl.'s Mot. Summ. J., ECF No. 28. Additionally, Defendant now moves for a default judgment against Heritage Partners Group LLC ("Heritage") and Safe Houze LLC ("Safe Houze") (together, "Third-Party Defendants"). *See* Def.'s Mot. Default J., ECF No. 32. The Honorable Joanna Seybert referred both motions to this Court to issue a Report and Recommendation. *See* Orders Ref. Mots., May 7, 2021. For the

1

reasons set forth below, I respectfully recommend that Plaintiff's Motion for Summary Judgment be GRANTED, and Defendant's Motion for Default Judgment be GRANTED IN PART.

## I.   FACUAL BACKGROUND

### A.  Contract Between Plaintiff and Defendant.

The facts, as described in the Parties' Rule 56.1 statements, are as follows.[1]  Plaintiff is a Maryland corporation that operates a commercial office products business in Rockville Maryland.  *See* Pl.'s Rule 56.1 Statement of Facts ("Pl. 56.1") ¶ 1, ECF No. 28-2.  Defendant is a New York corporation that operates from offices located at 15 Cuttermill Road, Great Neck, New York 11021.  *Id.* ¶ 2.  Plaintiff sent Defendant a purchase order in the amount of $149,800, dated July 7, 2020, for the purchase of 10,000 boxes of nitrile gloves ("the gloves").  *Id.* ¶ 8.  On July 8, 2020, Defendant agreed to sell, and Plaintiff agreed to buy the gloves for $149,800.  *Id.* ¶ 9.  That same day, Defendant emailed Plaintiff an invoice that lists July 9, 2020 as the "Ship Date," and the "Date Needed by" as "ASAP."  *Id.* ¶ 10.  However, there is also an invoice with a ship date of July 29, 2020.  *See* Def.'s Rule 56.1 Counter-Statement of Facts ("Def. 56.1") ¶ 10, ECF No. 30-16; Decl. of Douglas M. Lieberman ("Lieberman Decl.) at Ex. D, ECF No. 30-6.[2] The purchase order sent by Plaintiff left the "Date Required" column blank.  Def. 56.1 ¶ 10; Decl. of Stuart A. Berman ("Berman Decl.") at Ex. 9, ECF No. 28-12.  Plaintiff paid for the gloves by company check, which Defendant received and deposited.  Pl. 56.1 ¶ 12.

On July 9, 2020, Plaintiff issued an invoice to resell the gloves to the Government of Montgomery County, Maryland for $192,500.00.  *Id.* ¶ 13.  Defendant disputes these allegations, stating that the September 11, 2020 email sent from Sunil Pandya, not a party to this suit,

---

[1] Statements attributed only to Plaintiffs' Rule 56.1 statement are not in dispute unless otherwise noted.  Facts disputed by Defendant are identified throughout the Report and Recommendation.

[2] The Court notes that, though the Lieberman Declaration suggests the invoice appears at Exhibit C, the invoice was filed at Exhibit D.

indicates that the Montgomery County Government placed an order to purchase the gloves from Plaintiff at $14.98 per box, for a total value of $149,800.  Def. 56.1 ¶ 13; Berman Decl. at Ex. 14, ECF No. 28-18.

### B.  Contract between Defendant and Third-Party Defendants

The facts below are taken from Defendant's Third-Party Complaint, and are deemed admitted by virtue of Third-Party Defendants' default.  Heritage is a limited liability company that is organized and existing in the state of Virginia.  Third-Party Compl. ¶ 2, ECF No. 7.  Safe Houze is a limited liability company that is organized and existing in the state of Georgia.  *Id.* ¶ 4.  At all times relevant hereto, Safe Houze was acting as a sales representative for Heritage.  *Id.* ¶ 14.  Both Safe Houze and Heritage transact business in the state of New York.  *Id.* ¶¶ 3, 5.

In order to fulfill its shipment to Plaintiff, Defendant contracted with Heritage to purchase the gloves on or about July 8, 2020.  *See id.* ¶¶ 10-20.  At the time Defendant purchased the gloves, Heritage advised Defendant that the gloves would be shipped to Plaintiff directly within the week.  *Id.* ¶ 21.  On or about July 10, 2020, Defendant wired $123,500 to Heritage as full payment for the gloves.  *Id.* ¶ 22.  Beginning on or about July 23, 2020, Defendant contacted both Safe Houze and Heritage to confirm when the gloves were being shipped.  *Id.* ¶ 23.  During such communications, Heritage advised Defendant of expected delivery dates.  *Id.* ¶ 24.  Defendant advised Plaintiff on the shipment and expected delivery dates of the gloves based on information it received from Heritage.  *Id.* ¶ 25.  Heritage advised Defendant that the Gloves were shipped to Plaintiff as of July 29, 2020.  *Id.* ¶ 26.  On July 29, 2020, Heritage forwarded a bill of lading to Defendant which indicated that the gloves had been shipped.  *Id.* ¶ 27.  On that same day, Heritage forwarded Defendant an updated bill of lading for the gloves.  *Id* ¶ 28.

However, Heritage never shipped the gloves to Plaintiff. *Id.* ¶¶ 29-30.  Heritage did not have the gloves despite representations that it did. *Id.* ¶ 31.

### C.  Subsequent Communications between Plaintiff and Defendant.

Plaintiff and Defendant engaged in a series of emails from July 14, 2020 to July 27, 2020. *See* Pl. 56.1 ¶¶ 16-32, 34-42.[3]  On July 16, 2020, Jay Kristal, Defendant's officer and director, sent an email to Plaintiff with the subject line "GLOVES TRUCKED." *Id.* ¶ 19.  In that email, Defendant told Plaintiff that "[y]*our gloves were shipped on Tuesday night in an 18 wheeler with other drops.  They were shipping from Texas and due in your faculty* [*sic*] *within 5 days – so should be* at [Plaintiff] *by Monday 7/20 / Tuesday 7/21 next week.*" *Id.*  At 8:50 PM, David F. Golden, acting as a broker between Plaintiff and Defendant, sent Defendant an email with the subject line, "*Urgent you need to tell* [Plaintiff] *what is going on. Tonight.*" *Id.* ¶ 20.  At 10:20 PM, Defendant sent another email stating "*your order shipped Tuesday [July 14, 2020] and you will receive it by Monday/Tuesday next week*" and that he was being "*harassed by you calling and calling and calling me.*" *Id.* ¶ 21 (brackets in original).  On July 20, 2020, Plaintiff asked for an update on the gloves. *Id.* ¶ 23.  On July 21, 2020, having never received the gloves, Plaintiff sent an email to Defendant requesting that Defendant refund its money because Plaintiff's

---

[3] Defendant does not dispute the allegations to the extent that they cite the email text.  However, Defendant disputes Plaintiff's allegations that Defendant orally indicated in a telephone conversation that it would return the purchase price to plaintiff, *see* Def. 56.1 ¶ 33, and that Defendant confirmed that it would return the purchase price in writing, *id.* ¶ 37.  Instead, Defendant states that Defendant indicated that it would return the purchase price to Plaintiff only after Defendant received its money back from Heritage. *Id.* ¶¶ 33, 37; Decl. of Jay Kristal ("Kristal Decl.") ¶ 9, ECF No. 30-15. The Court notes that the Kristal Declaration cited here is similar to but different than the Kristal Declaration that Defendant submits in support of its Motion for Default Judgment, *see* Decl. of Jay Kristal Supp. Mot. Default J. ("Kristal Decl. Supp. Mot. Default J."), ECF No. 32-7; the Declaration submitted with Defendant's Opposition includes paragraphs that appear to be out of order and absent from the Declaration submitted with the Motion for Default Judgment.

customer wanted to cancel its order. *Id.* ¶ 24.  On July 22, 2020, Plaintiff sent another email stating "[p]*lease call me back. I need to get these gloves from another vendor*."  *Id.* ¶ 25.

On July 23, 2020, Defendant sent four emails to Plaintiff.  *Id.* ¶¶ 27-30.  At 11:56 AM, Defendant told Plaintiff that "*by Noon tomorrow you will have 14 pallets with 750 cases to a Pallet delivered to your facility*".  *Id.* ¶ 28.[4]  At 5:32 PM, Defendant followed up with an email containing the subject line *"Trucking vendor just called me and truck is loaded leaving tonight*".  *Id.* ¶ 29.  However, the gloves were never delivered to Plaintiff.  *Id.* ¶ 31.  The Parties agree that Defendant breached its agreement to deliver the gloves to Plaintiff in July 2020.  *Id.* ¶ 32.  Plaintiff claims that, due to the non-delivery of the gloves, Defendant verbally agreed to refund the purchase price to Plaintiff.  *Id.* ¶ 33.  However, Defendant claims that Defendant verbally agreed to refund the purchase price only after it received money back from Third-Party Defendants.  Def. 56.1 ¶ 33.

At 3:10 PM on July 24, 2020, Plaintiff emailed Defendant stating, "*I think we should cancel this order.  [Plaintiff] gets it money back . . . [c]an't keep the customer waiting.*  Pl. 56.1 ¶ 35.  At 5:12 PM, Plaintiff sent an email to Defendant stating in pertinent part:

> *This email is to confirm that you have agreed to cancel order PO-24462 made payable to 2 crystals on 7/7/2020 for $149,800.00 guaranteeing my money to be refunded.*
> *$149,800.00 is to be wired back to Benjamin Office Supply's account within the next 24 hours from 7/24/2020.*
> *You have assured me that all my funds will be returned to me. Please contact me when you have send my money.*

*Id.* ¶ 36.  Plaintiff alleges that, on July 25, 2020, Defendant confirmed that it would refund the purchase price to Plaintiff.  *Id.* ¶ 37.  Defendant states that it confirmed it would refund Plaintiff's money after Defendant received its own money back from Heritage.  Def. 56.1 ¶ 37.

---

[4] This Court notes that cited email actually states, "14 Pallets with 70 cases to a Pallet." Def. 56.1 ¶ 28; Berman Decl. at Ex. 29, ECF No. 28-33.

The email Defendant sent states in pertinent part, "*I don't have to ask you where I should wire your $ until I receive it back*" and "*I told you yesterday that you would receive your money*".  *See* Def. 56.1 ¶ 37; Berman Decl. at Ex. 3, ECF No. 28-6.  However, Defendant did not pay Plaintiff any funds on or after July 24, 2020.  *See* Pl. 56.1 ¶ 38.

On July 27, 2020 Plaintiff emailed Defendant, once again requesting a refund.  *See id.* ¶ 39.  At 3:24 PM, Defendant replied to Plaintiff, stating "[n]*ow you will wait till I receive the $ back from the vendor as you are right about that; HE HAS IT and I do Not*."  *Id*.  At 6:53 PM, Defendant sent another email stating "*Sandy will get the gloves in 48 hours or the $ if it does not show ( which it will )*" and "*I am NOT absconding with any $ as in either way I will make due with the Gloves or $ in Full ~ Returned*."  *Id*. ¶ 41.  Defendant sent one final email at 6:58 PM stating that "[Plaintiff] *will have gloves in 48 hours or money will be returned in full if they do not show up*."  *Id*. ¶ 42.

From July 23, 2020 to August and September 2020, Defendant exchanged text messages and had oral conversations with the principal of Heritage regarding the gloves.  *Id*. ¶ 43; Def. 56.1 ¶ 43; Berman Decl. at Ex. 40, ECF No. 28-44; Kristal Decl. at ¶ 7.  On or about September 4, 2020, Heritage refunded $10,000 of the $123,500 Defendant paid to Heritage for the gloves.  Pl. 56.1 ¶ 44.  To date, Defendant has accepted $149,800 from Plaintiff, and paid a net sum of $113,500 ($123,500 minus $10,000) to Heritage.  Pl. 56.1 ¶ 45; Def. 56.1 ¶ 45.  Defendant also paid $6,000 to Golden as commission on the transaction.  Def. 56.1 ¶ 45; Pl. Reply Opp. Summ. J. ("Pl.'s Reply") at 4, ECF No. 33.

## II.    Procedural History

### A.  Plaintiff's Motion for Summary Judgment

Plaintiff commenced this action on August 14, 2020.  *See generally* Compl.  In the Initial

Complaint, Plaintiff alleges one count; that Defendant committed breach of contract when it

failed to deliver the gloves to Plaintiff in July 2020.  Compl. ¶ 13.  On September 9, 2020,

Defendant filed its Answer, in which it admits that Plaintiff has not received the gloves and

invokes various affirmative defenses.  *See generally* Answer, ECF No. 5.  Following the

completion of discovery, on January 5, 2021, the District Court granted Plaintiff leave to file an

Amended Complaint, in which Plaintiff made modest changes to its claim for damages.  *See* Am.

Compl., ECF No. 24.  Defendant answered the Amended Complaint on January 6, 2021.  *See*

Answer & Aff. Defenses re Am. Compl., ECF No. 25.

On January 28, 2021, Plaintiff submitted its Motion for Summary Judgment against

Defendant.  *See generally* Pl.'s Mot. Summ. J., ECF No. 28.  In its original memorandum,

Plaintiff sought summary judgment on its breach of contract claim, and $42,700 in lost profits.

Pl.'s Mem. Supp. Summ. J. ("Pl.'s Mem.") at 11, 12.  However, in its Reply, Plaintiff states that

it is willing to drop its claim for lost profits if this Court finds Defendant liable for breach of

contract.  Pl.'s Reply at 5.  Defendant submitted its Opposition to Plaintiff's Motion for

Summary Judgment on February 2, 2021.  *See* Def. Mem. Opp. Summ. J. ("Def.'s Opp."), ECF

No. 30.

### B.  Defendant's Motion for Default Judgment

On September 23, 2020, Defendant commenced its Third-Party action against Third-

Party Defendants Heritage and Safe Houze.  *See generally* Third-Party Compl.  In its Third-Party

Complaint, Defendant brings against Heritage and Safe Houze breach of contract and related

claims arising out of the Third-Party Defendants' failure to deliver the gloves to Plaintiff in July 2020. *Id.* ¶¶ 40, 51. On January 11, 2021, Defendant requested that a certificate of default be entered against Heritage and Safe Houze for their failure to appear or otherwise defend this action. *See* Def. Req. for Certificate of Default, ECF No. 26. The Clerk of the Court entered the Third-Party Defendants' default on January 12, 2021. *See* Clerk's Entry of Default, ECF No. 27. On February 2, 2021, Defendant submitted its Motion for Default Judgment against the Third-Party Defendants, *see generally* Def. Mot. Default J., ECF No. 32.

## III.    LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute exists as to a material fact, the Court is required to "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). "If there is evidence in the record from which an inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Holt v. KMI-Cont'l*, 95 F.3d 123, 129 (2d Cir. 1996). Nonetheless, a "party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as mere "conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted). "The moving party bears the initial

8

burden of establishing that there are no genuine issues of material fact[;] once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (internal citations omitted).

### B.  Default Judgment.

The Federal Rules of Civil Procedure establish the procedure by which a default judgment may be obtained.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993) (explaining the process for entry of default and entry of default judgment prescribed by Fed. R. Civ. P. 55).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after a default has been entered against the defendant, and the defendant fails to appear to move or set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment.  Fed. R. Civ. P. 55(b)(2).

A party in default is deemed to concede all well-pleaded factual allegations in the complaint pertaining to liability.  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  However, "[e]ven after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *In re Wildlife Ctr., Inc*., 102 B.R. 321, 325 (Bankr. E.D.N.Y. 1989); *see also Rolls-Royce PLC v. Rolls-Royce USA*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) ("[I]t remains the court's responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief.").  A court considering a motion for default judgment thus retains the discretion to determine whether the entry of default judgment is appropriate in the given case.  *Enron*, 10 F.3d at 95; *see also Taylor v. 312 Grand St.*

9

*LLC*, 15 Civ. 5410 (BMC), 2016 WL 1122027, at *3 (E.D.N.Y. Mar. 22, 2016) ("[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." (citations omitted)).  A plaintiff moving for default judgment against a defendant in default thus retains the burden to establish the defendant's liability on any asserted cause of action on the basis of the unchallenged factual allegations and reasonable inferences drawn from the evidence in that case.  *City of New York v. Mickalis Pawn Shop*, LLC, 645 F.3d 114, 137 (2d Cir. 2011); *see also Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action . . .").

IV.    **DISCUSSION**

### A.  Plaintiff's Motion for Summary Judgment Against Defendant

To make out a viable claim for breach of contract under New York State law, a party need only allege "(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of contract by the defendant, and (4) damages."  *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004).  "[G]enerally, 'a motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning.'"  *Sunoco, Inc. (R & M) v. 175-33 Horace Harding Realty Corp.*, 969 F. Supp. 2d 297, 303 (E.D.N.Y. 2013) (quoting *Topps Co. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 68 (2d Cir.2008)).  Contract language is unambiguous if it has "a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion."  *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir. 1989).  By contrast, contract language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir.1993)).  "Evidence of a signed written agreement between the parties, along with invoices reflecting the defendant's unpaid balance, is sufficient to establish a prima facie case for breach of contract."  *AT&T Corp. v. Publ'g Concepts L.P.*, No. O8-CV-7658, 2010 WL 1191380, at *3 (S.D.N.Y. Mar. 29, 2016).

> **i.   Liability**

It is undisputed, and the evidence establishes, that on July 8, 2020, Plaintiff agreed to buy, and Defendant agreed to sell, 10,000 boxes of nitrile gloves for $149,800.  Pl. 56.1 ¶ 9.  Plaintiff's purchase order and Defendant's invoice establish the quantity of nitrile gloves to be purchased, the price per box, and the total price.  *See* Berman Decl. at Exs. 9, 10, ECF No. 28-13.  The invoice also provides that the gloves were to be shipped by trucking by July 9, 2020.  *See id.* at Ex. 10.  Although Defendant provides a separate invoice with a "Ship Date" of July 29, 2020, *see* Lieberman Decl. at Ex. C, Defendant does not contest the validity of Plaintiff's invoice or purchase order.  *See* Def.'s Opp. at 2-3; Def. 56.1 ¶¶ 8-11.  Accordingly, the parties formed a valid and enforceable contract under New York law.  *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) ("to form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound"); *Dell's Maraschino Cherries Co. v. Shoreline Fruit Growers, Inc.*, 887 F. Supp. 2d 459, 471 (E.D.N.Y. 2012) ("[i]n a contract for a sale of goods, the essential terms are quantity, price, and the time and manner of delivery").

It is also undisputed that Plaintiff fully performed under the contract by sending Defendant a company check for $149,800 as payment for the gloves on July 8, 2020.  Pl. 56.1 ¶

12.  Defendant does not deny that it breached the contract by failing to deliver the gloves to Plaintiff in July 2020.  *Id*. ¶32; Def. 56.1 ¶ 32.  Defendant's only defense against liability is that the breach was due to the Third-Party Defendants' failure to supply the gloves to Plaintiff.  *See* Def.'s Opp. at 6.  Defendant states that Plaintiff knew that Defendant was not in possession of the gloves during the parties' initial conversations.  *See id*.; Answer ¶ 7.  In support of this claim, Defendant emphasizes how neither the purchase order nor the invoice indicate that Defendant was in possession of the gloves, and that communications between the parties refer to gloves located in New Jersey and California.  *See id*.; Berman Decl. at Exs. 6, 9, 10A.  However, there is nothing to indicate that Defendant's obligation to fulfill delivery was contingent on Defendant's procurement of the gloves from the Third-Party Defendants.  Nor will the Court imply such a term.  *See Schmidt v. Magnetic Head Corp*., 97 A.D.2d 151, 157 (App. Div. 1983) ("An omission or mistake in a contract does not constitute an ambiguity")*; see also Reiss v. Financial Performance Corp*., 97 N.Y.2d 195, 199 (2001) ("where a contingency has been omitted, we will not necessarily imply a term since courts may not by construction add or excise terms . . . and thereby make a new contract for the parties under the guise of interpretating the writing") (quoting *Schmidt,* 97 A.D.2d, at 157) (internal quotation marks omitted).

Accordingly, this Court finds that there is no issue of material fact as to whether Defendant committed breach, and recommends that Plaintiff's Motion for Summary Judgment be granted.  *See AT & T Corp.*, 2010 WL 1191380, at *6 (granting summary judgment where plaintiff presented detailed invoices and corresponding statements showing outstanding balance and defendant failed to establish the existence of a material issue of fact for trial); *see also Drug Guild Distribs. v. 3-9 Drugs Inc*., 277 A.D.2d 197, 199 (App. Div. 2000) (prima facie entitlement to judgment was shown when plaintiff presented detailed invoices in support of its claim).

### ii.   Damages

Turning to the issue of damages, U.C.C. § 2-711 allows for a party to recover so much of the price as has already been paid in situations where the seller fails to make delivery.  N.Y. U.C.C. § 2-711.  Plaintiff seeks to recover $143,800 in damages suffered as a result of Defendant's breach.[5]  Pl.'s Reply at 5.  The purchase price for the gloves was $149,800.  Pl. 56.1 ¶ 9.  Plaintiff concedes that David Golden, the broker who arranged the transaction, turned over the $6,000 commission he had received from Defendant.  *See* Pl.'s Reply at 4; *see also* Lieberman Decl. at Ex. B.  Defendant does not dispute that besides the $6,000 payment, Plaintiff has not been refunded the full $149,800 purchase price.  See Def. 56.1 ¶ 38.  Accordingly, this Court recommends that Plaintiff be awarded $143,800 in actual damages pursuant to N.Y. U.C.C. § 2-711.

Plaintiff also seeks prejudgment interest calculated at a rate of 9% per annum.  *See* Pl. Supp. at 13-14.  It is well settled that state law applies to an award of prejudgment interest in a diversity suit in federal court.  *See*, *e.g.*, *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999).  The New York Civil Practice Law and Rules permit recovery of prejudgment interest "upon a sum awarded because of a breach of performance of a contract . . . ."  NY C.P.L.R. § 5001(a).  In actions for money damages, the New York statutory rate for prejudgment interest is 9% per annum.  *Id*. § 5004.  Under C.P.L.R. § 5001(b), a prevailing party is entitled to prejudgment interest "computed from the earliest ascertainable date the cause of action existed."  *Id*. § 5001(b).  Here, accounting for 6 days of shipping, Plaintiff states that the earliest date that the cause of action existed was July 15, 2020.  *See* Pl.'s Supp. at 14.

---

[5] In its Reply, Plaintiff states that it is willing to drop its claim for $42,700 in lost profits if this Court orders Defendant to pay actual damages plus prejudgment interest.  *See* Pl.'s Reply at 6.

Accordingly, this Court recommends that Plaintiff be awarded prejudgment interest at 9% per annum from July 15, 2020 until the date judgment is entered against Defendant on this claim. *See Arch Specialty Ins. Co. v. Canbert Inc.*, No. 19-CV-05920, 2021 WL 1200329, at \*6 (E.D.N.Y. Mar. 9, 2021) (recommending awarding prejudgment interest at a rate of 9% per annum in a breach of contract action), *adopted by*, 2021 WL 1193004 (E.D.N.Y. Mar. 30, 2021).

## B.  Defendant's Motion for Default Judgment Against Third-Party Defendants

Defendant, as Third-Party Plaintiff, now moves for a default judgment against Third-Party Defendants.  *See generally* Def. Mot. Default J.  In its Third-Party Complaint, Defendant seeks to recover against both Heritage and Safe Houze for breach of contract, negligent misrepresentation, and fraudulent misrepresentation.  Third-Party Compl. ¶¶ 40, 51, 83, 96. Additionally, Defendant seeks to recover against Heritage alone for conversion, money had and received, and unjust enrichment.  *Id*. ¶ 58, 64, 71.  Defendant seeks $113,500.00 in damages upon a finding of the Third-Party Defendants' liability.  *Id*.  Because the Third-Party Defendants have failed to appear or otherwise defend against this action, this Court will consider all well-pleaded allegations in the Third-Party Complaint as true and will proceed to address issues of liability and damages.  *See Rolls-Royce*, 688 F. Supp. 2d at 153.

### i.    Liability

#### 1.  Breach of Contract

As noted above, to prevail on a breach of contract claim under New York law, a party must establish (1) the existence of an agreement; (2) adequate performance of the contract by plaintiff; (3) breach of contract by the defendant; and (4) damages suffered as a result of the breach.  *See Eternity Glob. Master Fund Ltd.*, 375 F.3d at 177.   Here, Defendant's allegations in the complaint establish the existence of an agreement.  *See Register.com, Inc.*, 356 F. 3d at 427

("[t]o form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound"). The Third-Party Complaint establishes that, on July 8, 2020, Defendant contracted with Heritage and Safe Houze (together, "Third-Party Defendants") for the delivery of the 10,000 Boxes of nitrile gloves for $123,500. *See* Third-Party Compl. ¶¶ 10-20. At the time Defendant ordered the gloves, Heritage advised Defendant that the gloves would be shipped to Plaintiff within the week. *Id.* ¶ 21. Accordingly, this Court finds that the allegations in the Third-Party Complaint, admitted by virtue of Third-Party Defendants' default, suffice to establish the existence of an agreement under New York law. *See Almazan v. Almazan*, No. 14-CV-311, 2015 WL 500176, at *5 (S.D.N.Y. Feb. 4, 2015) ("[w]hile a plaintiff 'need not attach a copy of the contract to the complaint or quote the contractual provisions . . . the complaint must at least set forth the terms of the agreement upon which liability is predicated . . . by express reference'") (quoting *Howell v. Am. Airlines, Inc*., 07-CV-3628, 2006 WL 381144, at *3 (E.D.N.Y. Dec. 11, 2006)).

The Third-Party Complaint further establishes that, on July 10, 2020, Defendant fully performed under the contract by wiring $123,500 to Heritage as full payment for the gloves, Third-Party Compl. ¶ 22, and that Heritage and Safe Houze breached the contract by failing to deliver the gloves, *id.* ¶ 30. As of today, Defendant has only been refunded $10,000 of the total money it is owed under the contract. *Id.* ¶ 39. Therefore, as a result of Third-Party Defendants' breach, Defendant has suffered $113,500 in damages. *Id.* ¶ 42. Accordingly, this Court finds that the allegations in the Third-Party Complaint, coupled with Third-Party Defendants' default, suffice to establish Heritage and Safe Houze's liability for breach of contract. *See Mor USA, Inc. v. Adam Trading, Inc*., No. 19-CV-7283, 2021 WL 799327, at *3 (E.D.N.Y. Feb. 10, 2021) (recommending finding defendant in default liable for breach of contract where the complaint

adequately alleged all elements of breach of contract under New York Law), *adopted by*, No. 19-CV-7283, 2021 WL 796061 (E.D.N.Y. Mar. 1, 2021); *Arch Specialty Ins. Co. v. Apco Indus., Inc.*, No. 18-CV-4041, 2020 WL 6581000, at *5, 8 (E.D.N.Y. Oct. 5, 2020) (same).

## 2.  Fraudulent Misrepresentation

The Third-Party Complaint also alleges fraudulent misrepresentation.  Specifically, Defendant alleges that Heritage and Safe Houze made fraudulent misrepresentations regarding the gloves during communications between the parties in July 2020.  *See* Third-Party Compl. ¶ 84.  "Under New York law, a cause of action sounding in fraud cannot be maintained when the only fraud charged relates to a breach of contract."  *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 197 (S.D.N.Y. 2011) (citing *W.B. David & Co., Inc. v. DWA Commc'ns, Inc.*, No. 02-CV-8479, 2004 WL 369147, at *3 (S.D.N.Y. Feb. 26, 2004)) (noting that courts applying New York law do not "recognize claims that are essentially contract claims masquerading as claims of fraud").  However, "parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages."  *GWG MCA Cap., Inc. v. Nulook Cap., LLC*, No. 17-CV-1724, 2019 WL 1084777, at *5 (E.D.N.Y. Mar. 7, 2019) (citing *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183-84 (2d Cir. 2007) (internal quotations omitted).  A fraud claim is redundant if it "arises out of the same facts as [a] breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties."  *See Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (quoting *Sudul v. Computer Outsourcing Servs.*, 868 F.Supp. 59, 62 (S.D.N.Y. Nov. 9, 1994)).  However, a

plaintiff may bring parallel claims where there are "[m]isrepresentations of present facts made post-contract formation that are collateral or extraneous to the contract." *See U.S. Bank Nat'l Ass'n v. BFPRU I, LLC*, 230 F. Supp. 3d 253, 260 (S.D.N.Y. 2017).

Defendant's fraudulent misrepresentation claim fails as duplicative of its breach of contract claim. Defendant identifies no legal duty that Third-Party Defendants owed it that is separate from their duty to perform under the contract. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018) (no fiduciary duty where parties deal at arm's length in a commercial transaction absent extraordinary circumstances). The Court next considers whether Defendant alleged a "misrepresentation that is collateral or extraneous to the contract," such that its fraud claim is parallel to its claim for breach. *Merrill Lynch & Co. Inc*., 500 F.3d at 183-84. Defendant alleges that, after the contract was formed on July 10, 2020, the parties engaged in a series of communications regarding delivery of the gloves. *See* Third-Party Compl. ¶¶ 23-24. During the course of such communications, Heritage informed Defendant that the gloves had been shipped as of July 29, 2020 and forwarded two bills of lading to Defendant indicating the same. *See id*. ¶¶ 26-28. Defendant alleges that the bills of lading "were fraudulent." *Id.* ¶ 29. While the alleged communications and bills of lading may be characterized as representations of present fact, they relate merely to Third-Party Defendants' performance under the contract and are thus not considered collateral. *See Miramax Film Corp. v. Abraham*, No. 01 CV 5201, 2003 WL 22832384, at *12 (S.D.N.Y. Nov. 25, 2003) (finding allegations insufficient to support fraud claim where the "misrepresentations concerning Allied's offer are of interest to plaintiff solely because it relates to defendants' performance under the Kolya Agreement. Therefore, these alleged misrepresentations are not collateral to terms of the parties' contract."); *see also BJB Ltd. v. iStar Jewelry LLC*, No. 19-CV-3748, 2021 WL 1431345, at *13 (E.D.N.Y. Apr. 9, 2021)

17

(stating that alleged misrepresentations concerning "prospective intent" to fulfill contract requirement "would not be actionable in fraud"). Finally, Defendant does not seek special damages for its fraud claim. *See Maricultura Del Norte v. World Bus. Capital, Inc.*, 159 F. Supp. 3d 368, 379 (S.D.N.Y. 2015) (finding plaintiffs did not adequately allege special damages where "damages appear to be part and parcel of the damages that flow from the alleged breach of contract" and plaintiffs did not present "argument for why . . . damages should be treated as 'special damages'").

Even if Defendant's claim for fraudulent misrepresentation was not duplicative of its contract claim, it would fail because Defendant does not satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 196 (S.D.N.Y. 2011) (dismissing plaintiff's claims for fraudulent misrepresentation for failing to meet the pleading standards of Rule 9(b)). To comply with Rule 9(b), a complaint alleging fraudulent misrepresentation under New York law must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. Aug. 31, 2011) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

Defendant's allegations are impermissibly general as to the time, place, speaker, and content of the misrepresentations. The Third-Party Complaint broadly alleges that Heritage advised Defendant that the gloves had been shipped as of July 29, 2020 and forwarded two bills of lading to indicate the same. *See* Third-Party Compl. ¶¶ 26-29. However, these vague allegations do not identify the speaker whose statements might expose Heritage to liability. *See Ben Hur Moving & Storage, Inc. v. Better Bus. Bureau*, No. 08-CV- 6572, 2008 WL 4702458, at

*4 (S.D.N.Y. Oct. 3, 2008) ("The plaintiff's complaint fails [the Rule 9(b)] standard because the allegations in the complaint do not specify the time, place, [or] speaker . . . of the misrepresentations that were allegedly made through the mails and over the Internet."); *Wolff Office Equip. Corp. v. Wang Labs., Inc.*, No. 87-CV-1498, 1987 WL 26844, at *3 (S.D.N.Y. Nov. 30, 1987) (finding claim failed to meet standard of Rule 9(b) where averments of corporate defendant "fail[ed] to connect the allegation of fraudulent misrepresentation to a particular speaker"). Moreover, the allegations specify neither the medium by which the misrepresentations were made nor when the misrepresentations were made; rather, the Third-Party Complaint merely suggests that Heritage made the misrepresentations "[d]uring the course of . . . contacts" that began "on or about July 23, 2020." *See* Third-Party Compl. ¶¶ 23, 26. While the Third-Party Complaint avers that Heritage "forwarded" to Defendant two fraudulent bills of lading on July 29, 2020, it does not indicate who at Heritage forwarded the bills of lading. *See id.* ¶¶ 27-29. For these reasons Defendant fails to satisfy the requirements of Rule 9(b), the purpose of which is to give the Third-Party Defendants "fair notice of what [Defendant's] claim is and the grounds upon which it rests." *Ellington Credit Fund*, 837 F. Supp. 2d at 199 (quoting *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir. 1979)). Accordingly, this Court respectfully recommends that Defendant's claim for fraudulent misrepresentation be dismissed with leave to replead.

### 3. Negligent Misrepresentation

This Court also recommends dismissing Defendant's claims for negligent misrepresentation as duplicative of the contract claims and for failing to satisfy the pleading requirement of Rule 9(b). As with its fraudulent misrepresentation claim, Defendant's negligent misrepresentation claim concerns Third-Party Defendants' failure to deliver the gloves, *see*

Third-Party Compl. ¶¶ 72-83, and is thus duplicative of the breach claims. *See Bracken v. MH Pillars Inc.*,290 F. Supp. 3d 258, 264-65 (S.D.N.Y. 2017) (identifying as duplicative a negligent misrepresentation claim based on alleged violations that "are indistinguishable from [defendant's] obligations to make payment under their contract"); *Premier Fla. Auto Sales & Leasing, LLC v. Mercedes-Benz of Massapequa, LLC*, No. 10 CV 4428(DRH)(WDW), 2013 WL 2177785, at *6 (E.D.N.Y. May 20, 2013) ("no damages can be awarded for misrepresentation" where negligent misrepresentation claim arose out of same facts as breach of contract claim).  As suggested, "a cause of action for negligent or fraudulent misrepresentation cannot arise 'out of the same facts that serve as the basis for [a party's] causes of action for breach of contract.'" *Taizhou Zhongneng Import & Export Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 57 (2d Cir. 2013) (quoting *Locascio v. James V. Aquavella, M.D., P.C.*, 586 N.Y.S.2d 78, 79 (App. Div. 2991)).

Further, as with claims of fraud, a complaint alleging negligent misrepresentation must be plead "with particularity" pursuant to Rule9(b).  See *Liberty Mut. Ins. Co. v. Palace Car Servs. Corp.*, No. 06-CV-4881, 2007 WL 2287902, at *2 (E.D.N.Y. Aug. 8, 2007) (citing *Aetna Cas. & Sur. Co. v. Aniero Concrete Co*., 404 F.3d 566, 583 (2d Cir. 2005)); *see also Naughright v. Weiss*, No. 10-CV-8451, 2011 WL 5835047, at *7 (S.D.N.Y. Nov. 18, 2011) ("since negligent misrepresentation is a type of fraud, it is subject to Rule 9(b)'s heightened pleading standard") (citation omitted).  As with its fraudulent misrepresentation claim, Defendant offers insufficient detail about alleged misrepresentations made by Heritage and Safe Houze regarding the delivery of the gloves.  Accordingly, because Defendant's allegations are too general to pass muster under Rule 9(b), this Court recommends that Defendant's claim for negligent misrepresentation be dismissed.

### 4.  Other Claims

The Third-Party Complaint also alleges claims against Heritage alone for money had and received, unjust enrichment, and conversion.  Third-Party Compl. ¶¶ 54-58, 60-64, 66-71.  These claims are premised on the same factual allegations as the breach of contract claim, and Defendant seeks the same amount of relief, $113,500, on each claim.  *See generally Id.*

As a general rule, "where a plaintiff seeks recovery for the same damages under different legal theories, only a single recovery is allowed." *Seifts v. Consumer Health Sols. LLC*, 61 F. Supp. 3d 306, 326 (S.D.N.Y. 2014) (quoting *Conway v. Icahn & Co*., 16 F.3d 504, 511 (2d Cir. 1994)).  Courts frequently dismiss duplicative claims that arise from the same facts and seek the same relief as another claim.  *See Amable v. New Sch.*, 20-CV-3811, 2021 WL 3173739, at *13 (S.D.N.Y. July 27, 2021) (dismissing money had and received claim that was duplicative of breach of contract claim and collecting cases); *LG Capital Funding, LLC v. Wowio, Inc.*, No. 16-CV-6632, 2018 WL 3202077, at *9 (Apr. 24, 2018) (dismissing unjust enrichment claim that was duplicative of breach of contract claim), *adopted by* 2018 WL 2224991 (E.D.N.Y. May 15, 2018); s*ee also Ainbinder v. Money Ctr. Fin. Grp., Inc*., No. 10-CV-5270, 2013 WL 1335997, at *9 (E.D.N.Y. Feb. 28, 2013) (finding conversion and breach of contract claims duplicative and collecting cases), *adopted by* 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013).

Here, Defendant does not assert that it is entitled to different or greater relief with respect to one of its claims as compared to the others.  As such, this Court recommends dismissing Defendant's money had and received, unjust enrichment, and conversion claims without prejudice to filing a renewed Motion for Default Judgment demonstrating that these claims are not duplicative of the breach of contract claim.

21

## 5. Common-Law Indemnification

Defendant also cannot maintain an action for common-law indemnification against Heritage and Safe Houze, because New York law does not allow a party to obtain common-law indemnification to recover damages resulting from its own breach of contract. "Under New York law, common-law indemnification allows a party who has been compelled to pay damages for the wrongdoing of another party to recover from the wrongdoer." *See CJUF III 20 Henry Prop. LLC v. Edison Coatings, Inc.*, No. 19-CV-1954, 2020 WL 4451924, at *3 (E.D.N.Y. Aug. 3, 2020) (citing *Arrendal v. Trizechahn Corp.*, 98 A.D.3d 699, 700 (App. Div. 2012). However, in cases of implied indemnity, "where the party seeking indemnification is himself at least partially at fault, indemnity will not be implied." *Knight v. H.E. Yerkes & Assocs., Inc.*, 675 F. Supp. 139, 143 (S.D.N.Y. 1987) (citing *Hanley v. Fox*, 97 A.D.2d, 606, 607 (App. Div. 1983)); *accord Milnot Holding Corp. v. Thruway Produce, Inc*., No. 08-CV-6140, 2014 WL 993743, at *4 (W.D.N.Y. Mar. 13, 2014).

Moreover, it is well established that "in New York, a party cannot obtain common-law indemnification resulting from its own breach of contract." *Milnot Holding Corp.*, 2014 WL 993743, at *4 ("since Milnot is suing Thruway for Thruway's own breach of contract, Thruway cannot maintain a common-law indemnification claim against Davies"); *see also Metro. Transit Auth. v. Systra Consulting Inc.*, No. 07-CV-1010, 2008 WL 11438071, at *3-6 (E.D.N.Y. Dec. 30, 2008) ("Systra's third-party [implied] indemnification claims against Halmar/Egis and Current Solutions must be dismissed," where plaintiff alleged defendant Systra's "own wrongdoing" by breach of contract, among other claims); *Commonwealth Insurance Co. v. Thomas A. Greene & Company, Inc.*, 709 F. Supp. 86, 89 (S.D.N.Y. Mar. 20, 1989) ("Greene is not entitled to common law indemnification from North River or Crum & Forster because it is

22

being sued for its own negligence, breach of contract, breach of warranty and breach of fiduciary duties, not for actions of North River or Crum & Forster"); *Chatham Towers, Inc. v. Castle Restoration & Const., Inc.*, 151 A.D.3d 419, 420 (App. Div. 2017) ("there is no common-law indemnification claim because Chatham sought recovery from Castle because of the latter's alleged wrongdoing—breach of contract—and not vicariously because of any negligence on the part of Zimmerman").

As the foregoing cases indicate, if Plaintiff were seeking to hold Defendant vicariously liable for Third-Party Defendants' actions, then Defendant could properly maintain a claim against Third-Party Defendants for common-law indemnification. However, since Plaintiff is suing Defendant for Defendant's own breach of contract, Defendant cannot maintain a common law indemnification claim against Heritage and Safe Houze. Accordingly, I respectfully recommend that Defendant's common-law indemnification claim against Heritage and Safe Houze be dismissed.

### ii. Damages

By defaulting, a defendant admits the well-pleaded allegations relating to liability, but not those pertaining to damages. *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). If liability is established as to a defaulting defendant, the plaintiff must still establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). The Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). However, the Court is not required to hold a hearing, "as long as it ensure[d] that there was a

23

basis for the damages specified in a default judgment." *Fustok v. Conti-Commodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).

Here, Defendant seeks $113,500 in damages on its breach of contract claims against Heritage and Safe Houze, jointly and severally, with interest accruing from July 10, 2020. *See* Third-Party Compl. ¶¶ 42, 53; Kristal Decl. Supp. Mot. Default J. ¶¶ 28, 31; Decl. of Lieberman Supp. Mot. Default J. ("Lieberman Decl. Supp. Mot. Default J") ¶ 2, ECF No. 32-1.[6] Defendant calculates its damages based on the amount it paid under the contract with the Third-Party Defendants, $123,500, less the $10,000 refund it received from Heritage. *See* Third-Party Compl. ¶¶ 39-42, 50-53; Kristal Decl. Supp. Mot. Default J. ¶¶ 15, 25, 28, 31. In connection with its Motion for Default Judgment, Defendant submits a declaration from its officer and director Jay Kristal. Kristal Decl. Supp. Mot. Default J. ¶ 1. The Declaration supports the allegations concerning the money paid by Defendant to Third-Party Defendants and the money returned to Defendant from Heritage, and states that the Third-Party Defendants are "indebted to [Defendant] in the sum of $113,500.00, together with interest." *See id.* ¶¶ 15, 25, 28, 31. Accordingly, this Court respectfully recommends granting Defendant's request for damages. *See Leggett & Platt, Inc. v. CM Mattress, LLC*, 14-CV-3277 (KAM)(RLM), 2015 WL 7281635, at *3 (E.D.N.Y. Nov. 16, 2015) (awarding damages against defendant in default where plaintiff submitted affidavit stating amount owed by defendant for breach of contract).

Because it has prevailed on its breach of contract claim, Defendant is also entitled to interest. *See* N.Y. C.P.L.R. § 5001(a) ("[i]nterest shall be recovered upon a sum awarded because of breach of performance of a contract"). Again, the New York statutory rate for

---

[6] Defendant also seeks "the full amount of any judgment[] that may be entered in favor of Plaintiff . . . in the main action." Lieberman Decl. Supp. Mot. Default J. ¶ 2. Defendant does not demonstrate that it is entitled to damages in excess of the money it is owed on the contract, plus interest, discussed below.

interest is 9% per annum.  *Id*. § 5004.  Interest is to be "computed from the earliest ascertainable date the cause of action existed."  *Id*. § 5001(b).  "In New York, a breach of contract cause of action accrues at the time of the breach."  *Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 985, 402 (1993).  Defendant requests interest accruing from July 10, 2020, the date that Defendant paid for the gloves.  *See* Lieberman Decl. Supp. Mot. Default J. ¶ 2; Third-Party Compl. ¶ 22.  However, the Third-Party Complaint indicates that, when Defendant purchased the gloves on July 8, 2020, "Heritage advised that the [g]loves would be shipped directly to [Plaintiff] within a week."  Third-Party Compl. ¶¶ 20-21.  It thus appears that the Third-Party Defendants had until July 15, 2020 to perform.  The Court therefore respectfully recommends that Defendant be awarded interest from July 15, 2020 at the rate of 9% per annum.

## V.    CONCLUSION

For the reasons stated above, this Court respectfully recommends that Plaintiff's Motion for Summary Judgment be GRANTED, and that Plaintiff be awarded actual damages of $143,800 and pre-judgment interest accruing at a rate of 9% per annum from July 15, 2020 until the date judgment is entered.  This Court further recommends that Defendant's Motion for Default Judgment be GRANTED IN PART and DENIED IN PART, and that Defendant be awarded damages of $113,500 and interest accruing at a rate of 9% per annum from July 15, 2020.  Defendant's counsel is directed to serve copies of this Report and Recommendation upon Third-Party Defendants at their last known addresses and to file proof of service with the Court within three (3) days of the date of filing of this Report and Recommendation.

## VI.    OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and

Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                                        /s/
                                                    Steven L. Tiscione
                                                    United States Magistrate Judge
                                                    Eastern District of New York

Dated:  Central Islip, New York
August 10, 2021